IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORRIS BICKLEY, MICHAEL D. PRATTON, RAYMOND GREWE, DENNIS VANHORN, and DOUGLASS PUMROY, individually and on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>SCHNEIDER NATIONAL CARRIERS, INC., a Nevada corporation, and DOES 1 to 10, inclusive,<br><br>Defendants. | No. C 08-05806 JSW<br><br>**ORDER ON MOTION FOR CLASS CERTIFICATION** |

Now before the Court is the motion for class certification filed by Plaintiffs Morris Bickley, Michael D. Pratton, Raymond Grewe, Dennis Vanhorn, and Douglass Pumroy ("Plaintiffs"). Having considered the parties' grants in part and denies in part Plaintiffs' motion for class certification.[1]

**BACKGROUND**

Plaintiffs filed this putative class action against Schneider National Carriers, Inc. ("Schneider") based on its alleged failure to pay its employees for all hours worked in

---

[1] The Court grants Schneider's request for judicial notice (Docket No. 112), but denies Plaintiffs' request for judicial notice (Docket No. 156) because it did not need to consider these documents in order resolve the motion for class certification. The Court grants Plaintiffs' and Schneiders motions to file documents under seal (Docket Nos. 102, 104, 143, and 150). The Court need not address Schneiders' evidentiary objections because it did not need to consider this evidence in order to resolve the motion for class certification. However, the Court notes that in the future, the Court will only consider evidentiary objections raised within the parties' briefs in accordance with the Northern District Local Civil Rules.

accordance with California wage and hour laws and to provide meal and rest breaks. Plaintiffs assert the following claims against Schneider, *inter alia*: (1) failure to pay minimum wages for all hours worked under California law; (2) failure to pay for all miles actually driven under California law; (3) quantum meruit for failure to pay for all hours worked and miles driven; (4) failure to provide meal periods and rest breaks; (5) failure to furnish accurate itemized wage statements; and (6) failure to pay accrued vacation at rate required by California law.

In the instant motion, Plaintiffs seek class certification pursuant to Federal Rule of Civil Procedure 23 for the following class:

> All current and former California-based employees of Schneider National Carriers, Inc., at any time from November 25, 2004 to the present (the "Class Period"), employed in one of the following three types of truck driver positions: (a) Intermodal Drivers; (b) Dedicated Drivers; or (c) Regional Drivers.

"California-based" refers to employees: (i) who had a residential address in California at any time during the Class Period; and/or (ii) who were assigned to or associated with an operating center or operating point located in California at any time during the Class Period. Plaintiffs define the phrase "assigned to or associated with an operating center or operating point" to include any and all employees listed in Schneider's databases in connection with an operating center or operating point. Plaintiffs further seek to certify the following subclasses:

> a. The Dedicated Subclass, which is defined as all Defendants' current and former California-based, local and regional Dedicated Drivers (i.e. the Dedicated Subclass);
> b. The Former Dedicated Subclass, which is defined as all Dedicated Drivers who are no longer employed by Defendants;
> c. The Intermodal Subclass, which is defined as Defendants' current and former California-based, local and regional Intermodal Drivers (i.e. the Intermodal Subclass);
> d. The Former Intermodal Subclass, which is defined as all Dedicated Drivers who are no longer employed by Defendants;
> e. The Regional Subclass, which is defined as all Defendants' current and former California-based Regional Drivers (i.e. the Regional Subclass);
> f. The Former Regional Subclass, which is defined as all Regional Drivers who are no longer employed by Defendants; and
> g. The Salary Pay Subclass, which is defined as all members of the Class who received salaried pay for the time that they received such pay, as identified as such in Defendant's "Pay Detail" Database and/or other records.

2

1 Plaintiff further limit the Regional Subclass and Former Regional Subclass to truck drivers:
2 (i) who had a residential address in California at any time during the Class Period; and
3 (ii) who worked in Schneider's Van/Truckload division; and (iii) who worked in Schneider's
4 western regional services group (i.e., drivers in Schneider's "W1" work configuration); and
5 (iv) who were assigned to or associated with Schneider's French Camp operating center or
6 Schneider's Fontana operating center.

**ANALYSIS**

"Class certifications are governed by Federal Rule of Civil Procedure 23," and a plaintiff seeking class certification bears the burden of "demonstrating that he has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007); *see also Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *amended* 273 F.3d 1266 (9th Cir. 2001) (trial court must conduct a "rigorous analysis" to determine whether the requirements of Rule 23 have been met). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively deonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). Further, "[c]lass certification is not immutable, and class representative status could be withdrawn or modified if at any time the representatives could no longer protect the interests of the class." *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) (citing *Soc. Servs. Union, Local 535 v. County of Santa Clara*, 609 F.2d 944, 948-49 (9th Cir. 1979)).

**A.  Ascertainability.**

As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists. *Mazur v. eBay Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009). "'Although there is no explicit requirement concerning the class definition in FRCP 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed.'" *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999) (quoting *Elliott v ITT Corp*, 150

1 F.R.D. 569, 573-74 (N.D. Ill. 1992)). "A class definition should be 'precise, objective and
2 presently ascertainable.'" *Rodriguez v. Gates,* 2002 WL 1162675, 8 (C.D. Cal. 2002) (quoting
3 *O'Connor v. Boeing North American, Inc*., 184 F.R.D. 311, 319 (C.D. Cal. 1998)); *see also*
4 Manual for Complex Litigation, Fourth § 21.222 at 270-71 (2004). While the identity of the
5 class members need not be known at the time of certification, class membership must be clearly
6 ascertainable. *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970). The class definition
7 must be sufficiently definite so that it is administratively feasible to determine whether a
8 particular person is a class member. *See, e.g., Davoll v. Webb*, 160 F.R.D. 142, 144 (D. Colo.
9 1995).

10 Schneider contends that Plaintiffs fail to define an ascertainable class because it cannot
11 run a query to determine where its drivers worked in any workweek. The Court finds this
12 argument unpersuasive. Contrary to Schneider's argument, its own witness stated under oath
13 that it would be an easy search in its pay detail database to determine where its employees were
14 during the workweek. (Second Humphrey Decl., Ex. A at 328:7-329:15.)

15 Second, Schneider argues that based on Plaintiffs' concession that the applicability of
16 California law to work conducted extraterritorially is an open legal question, that Plaintiffs'
17 proposed class improperly includes a "fail-safe" definition. *See Brazil v. Dell, Inc.*, 585 F.
18 Supp. 2d 1158, 1167 (N.D. Cal. 2008) (holding that proposed class of consumers who
19 purchased Dell products that "Dell falsely advertised" would improperly require the court to
20 resolve the legal determination of whether Dell had, in fact, falsely advertised in order to
21 determine who was in the class.) The Court disagrees. Plaintiffs' proposed class does not
22 depend on the Court's resolution of this legal question. Instead, as Plaintiffs argue, the
23 resolution of this issue will merely affect the computation of damages.

24 Lastly, Schneider argues that Plaintiffs have improperly amended their proposed class
25 and subclasses after the deadline to amend their pleading has passed. However, Plaintiffs
26 alleged the same class and seven subclasses in their Consolidated Fourth Amended Complaint
27 ("CFAC"). The only slight difference is that in their CFAC, Plaintiffs allege that they "may
28 also seek to establish Subclasses for certain claims (e.g., minimum wage claims) based on

4

1 salaried vs. non-salaried work." (CFAC, ¶ 85(g).) In their motion, Plaintiffs make clear that
2 they are seeking to establish a "Salary Pay Subclass" which they define as "all members of the
3 Class who received salaried pay for the time that they received such pay, as identified as such in
4 Defendant's 'Pay Detail' Database and/or other records." The Court will allow Plaintiffs to
5 amend their class definition to clarify the salary pay subclass. Accordingly, the Court finds that
6 Plaintiffs have set forth an identifiable and ascertainable class and subclasses.

**B.      Rule 23(a) Requirements.**

Class certification is appropriate only if

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). As noted above, the Supreme Court has made clear that "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores*, 131 S.Ct. at 2551. The class can be certified only if the court "is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160-61 (1982).

The Supreme Court has noted that "[f]requently ... 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart*, 131 S.Ct. at 2551. "The district court is required to examine the merits of the underlying claim in this context, only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011) (citing *Wal-Mart*, 131 S.Ct. at 2552 n.6 (clarifying that Rule 23 does not authorize a preliminary inquiry into the merits of the suit for purposes other than determining whether certification was proper)). "To hold otherwise would turn class certification into a mini-trial." *Ellis*, 657 at 983 n.8.

5

### 1. Numerosity.

In order to meet their burden on Rule 23(a)'s "numerosity" requirement, Plaintiffs must demonstrate that the proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Although "[t]here is no absolute minimum number of plaintiffs necessary to demonstrate that the putative class is so numerous so as to render joinder impracticable[,] ... [j]oinder has been deemed impracticable in cases involving as few as 25 class members. ..." *Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D. 623, 628-29 (N.D. Cal. 2005) (internal citations omitted) (finding joinder was impractical where there were over 236 members in the putative class). As another court in this district has recognized "a survey of representative cases indicates that, generally speaking, classes consisting of more than 75 members usually satisfy the numerosity requirement of Rule 23(a)(1)." *Id.* (citing 7A Wright, Miller & Kane *Federal Practice and Procedure:* Civil 3d § 1762 (2005)). In this case, the record demonstrates that the proposed class consists of just under 4,000 persons. (*See* Declaration of Christina A. Humphrey ("Humphrey Decl."). ¶ 4.) Defendants have not contested numerosity. The Court finds that Plaintiffs have met their burden to show that the class is sufficiently numerous.

### 2. Commonality.

Commonality requires that there be "questions of fact and law which are common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality requirement serves chiefly two purposes: (1) ensuring that absentee members are fairly and adequately represented; and (2) ensuring practical and efficient case management." *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (internal quotation marks omitted). Courts look for "shared legal issues or a common core of facts." *Id.* Where diverging facts underlie the individual claims of class members, courts consider whether the issues "at the heart" of those claims are common such that the class vehicle would "facilitate development of a uniform framework for analyzing" each class member's situation. *Id*. at 1123. The class claims "must depend on a common contention," which "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one

6

1 of the claims in one stroke." *Wal-Mart*, 131 S.Ct. at 2551. The commonality requirement has
2 been construed permissively and is "less rigorous than the companion requirements of Rule
3 23(b)(3)." *Hanlon*, 150 F.3d at 1019.

           **i.**     **Minimum Wage Claims.**

5 With the exception of the employees who receive salary-based compensation, Schneider
6 utilizes a piece-rate compensation structure. Pursuant to the piece-rate compensation structure,
7 Schneider pays it employees a fixed amount for mileage and/or specific activities or
8 accessorials. For example an employee may be paid a flat rate of $100 for loading and
9 unloading freight on and off a truck without using mechanical devices, regardless of the time
10 this task takes to complete. (Humphrey Decl., Ex. G.) The amount each employee receives for
11 specific tasks or mileage may vary, pursuant to an employee's specific pay package. However,
12 Plaintiffs contend that, regardless of the pay schedule pursuant to which individual class
13 members are paid, there are certain activities for which Schneider does not provide any
14 compensation. Plaintiff argues that Schneider does not specifically pay its employees for the
15 following tasks in violation of California's minium wage laws: (1) inspecting trucks; (2) fueling
16 trucks; (3) performing maintenance on trucks; (4) hooking or unhooking trailers; (5) looking for
17 tractors and/or empty trailers; (6) waiting on customers; (7) waiting on dispatch; (8) using the
18 on-board computer system ("OBC System"); (9) completing paperwork; and (10) taking rest
19 breaks.

20 Schneider argues that, pursuant to *Wal-Mart*, Plaintiffs fail to show that there are
21 common questions of law or fact because individualized inquiries are required to construe the
22 terms of each driver's wage agreement. However, Schneider concedes that it unilaterally
23 determines the pieces for which its employees are paid and that it is not relying on the drivers'
24 intent or expectations. Moreover, Schneider does not dispute that drivers are not provided
25 compensation directly for the specific ten tasks identified by Plaintiffs. Instead, Schneider
26 argues that these tasks are considered to be covered by the other activities and/or mileage for
27 which the drivers are paid. (Declaration of Michael Nader, Ex. 29 to Ex. F (Schneider's Driver
28 Handbook, attached to the Deposition of Morris Eugene Bickley). Schneiders' Driver

7

1  Handbook provides that: "Except for the accessorial compensation in this summary, all other
2  delay time and non-driving including meetings work are considered to be covered by and
3  included in the mileage/salary or ABP pay." *Id.* Under Schneider compensations scheme, if a
4  driver is being paid a flat rate for driving 100 miles, that rate does not change, regardless of
5  whether the driver takes a rest break, does paper work, conducts maintenance on the vehicle, or
6  has to wait up to two hours for a customer. Whether Schneider is correct and it is legal under
7  California law to incorporate pay for certain activities into the piece-rate compensation for other
8  activities is a question of law which is common to all putative class members.

9  Additionally, California law requires employers to provide paid rest breaks. California
10 Wage Order 9 provides that "[a]uthorized rest period time shall be counted as hours worked for
11 which there shall be no deduction from wages." Under Schneider's piece-rate compensation
12 system, drivers accrue wages by driving a truck or performing one of the paid activities or
13 accessorials. It is undisputed that Schneider does not pay its drivers specifically for their rest
14 breaks. Rather, as with the other tasks identified by Plaintiffs above, Schneider contends that
15 compensation for rest breaks are included in the piece-rate pay for other activities. Whether
16 Schneider's compensation scheme of "considering" the rest breaks paid by incorporating
17 payment for rest breaks into the piece-rate compensation for other activities is lawful in
18 California is a question of law which is common to the purported class members.

19 Schneider also argues that Plaintiffs fail to demonstrate commonality because they
20 barely discuss load pay and do not address discretionary pay. However, the fact that Schneider
21 may pay some drivers a certain amount for a load delivered does not undermine Plaintiffs'
22 proposition that Schneider fails to compensate drivers directly for the ten tasks identified above.
23 Additionally, the fact that some drivers may receive some discretionary pay, does not detract
24 from Plaintiffs' theory that drivers are not regularly paid for these ten tasks. To the extent
25 Schneider provided some discretionary as compensation for some of these ten tasks to some
26 drivers, these amounts may be deducted from the damages calculations.

27 Plaintiffs further contend that Schneider fails to pay its drivers for the actual mileage
28 they drive, in violation of California's minimum wage laws. Schneider counters that it pays its

8

1  drivers based on calculations by the Household Carriers Mover's Guide ("HCMG") and that the
2  drivers agree to be paid by this method. However, again, whether Schneider is lawfully
3  permitted to pay its drivers according to the HCMG estimated calculations, as opposed to the
4  actual mileage when the actual mileage exceeds the HCMG estimate, is a question of law which
5  is common to the purported class members.

### ii. Claims Applicable to all Sub-Classes.

Plaintiffs assert the following claims on behalf of the salary sub-class, as well as the other subclasses: (1) failure to provide rest breaks; (2) failure to pay accrued vacation at the driver's final rate of pay, as required by California law; (3) failure to provide adequate meal breaks; and (4) failure to provide itemized wage statements in compliance with California law.

In addition to the claim that Schneider fails to pay its drivers for rest periods, Plaintiffs also claim that Schneider fails to "provide" adequate rest breaks and meal periods. The California Supreme Court recently clarified that employers must provide meal and rest periods by relieving employees of all duties, but employers "need not ensure that no work is done." *Brinker Restaurant Corp. v. Superior Court*, 53 Cal. 4th 1004, 139 Cal. Rptr. 315, 324 (2012). Under California law: "Employees are entitled to 10 minutes rest for shifts from three and one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours, 30 minutes for shifts of more than 10 hours up to 14 hours ..." *Id*. at 334. With respect to meal periods, employers are required to permit employees a reasonable opportunity to take an uninterrupted 30-minute off-duty break after no more than five hours, and a second meal period after no more than 10 hours of work. *Id*. at 343-45. Employers are required to keep accurate records of their employee's meal periods. *See* Wage Order No. 9-2001 § 7(a)(3); *see also Brinker*, 139 Cal. Rptr. at 353 (Wedegar, J., concurring). Moreover, the court clarified that a class action may be brought to challenge an employers' policies, whether formal or not, that pressure employees from taking their breaks. *Brinker*, 139 Cal. Rptr. at 343.

Schneider instructs its drivers that:

> In accordance with the Department of Transportation Regulations, **you are authorized to log meal stops and other routine stops enroute as "off duty" time.** During these stops the following criteria will apply:
> ...

9

1    2. These meal stops and routine stops will not be less than ten (10) minutes nor
     more than two (2) hours in length.
2    ...

(Humphrey Decl., Ex. T) (emphasis in original). This language does not provide drivers any information regarding how frequently their rest or meal breaks may be taken. This language is also vague with respect to the duration of meal periods, stating only that the meal and routine stops shall be between 10 minutes and 2 hours. However, California law requires that meal periods be at least 30 minutes. *Brinker*, 139 Cal. Rptr. at 343. Moreover, Schneider does not dispute that it does not keep records of its employees' meal periods. In light of Schneider's failure to instruct its drivers regarding the timing of rest breaks and meal periods as required by California law and Schneider's failure to keep records of its employees' meal periods, the Court finds that Plaintiffs have sufficiently demonstrated common questions which are applicable class-wide.

Plaintiffs also contend that Schneider fails to pay accrued vacation at the driver's final rate of pay, as required by California law. Under California law, when an employer provides paid vacation pursuant to a policy or contract, upon termination an employee shall be paid all accrued vacation at his or her final rate of pay. *See* Cal. Lab. Code § 227.3. It is undisputed that Schneider pays accrued vacation based on the driver's rate of pay earned during the previous year. (Humphrey Decl., Exs. V and W (Deposition of Mary J. Burich) at 142:19-146:8.) Because Schneider looks to the prior year, as opposed to the current year, potentially, employees might not receive their current rate of pay. (*Id*., Ex. W at 146:4-8.) Plaintiffs have presented a common question regarding whether Schneider's practice complies with California law.

Finally, Plaintiffs contend that Schneider's itemized wage statements do not comply with California law. According to Plaintiffs, Schneider's wage statements unlawfully fail to include all of the hours worked by its drivers, fail to include the applicable pay rates, fail to specify the actual miles driven, and fail to include all of the wages owed under California law. While Schneider argues that Plaintiffs have not demonstrated a uniform, compensable injury from any alleged failure to provide accurate itemized wage statements, Schneider does not

10

1 contend that Plaintiffs fail to demonstrate commonality on this claim. Accordingly, the Court
2 finds that Plaintiffs have presented a common question regarding whether Schneider's itemized
3 wage statements are in compliance with California law.

4 Therefore, the Court finds that the proposed class and sub-classes share sufficient
5 commonality to satisfy the requirements of Rule 23(a)(2).

### 3. Typicality.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As with the commonality requirement, the typicality requirement is applied permissively. *Hanlon*, 150 F.3d at 1020. "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Id.*; *see also Lozano*, 504 F.3d at 734 ("Under Rule 23(a)(3) it is not necessary that all class members suffer the same injury as the class representative."); *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005) ("In determining whether typicality is met, the focus should be 'on the defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff.") (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani,* 126 F.3d 372, 376 (2nd Cir. 1997)). The Court finds that Plaintiffs have satisfied the typicality requirement.

### 4. Adequacy of Representation.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020. In order to determine whether the adequacy prong is satisfied, courts consider the following two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action

11

vigorously on behalf of the class?" *Staton*, 327 F.3d at 957; *see also Fendler v. Westgate California Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975) (noting that representative plaintiffs and counsel also must have sufficient "zeal and competence" to protect the interests of the class). "'[T]he adequacy-of-representation requirement is satisfied as long as one of the class representatives is an adequate class representative.'" *Rodriguez v. West Publishing Co.*, 563 F.3d 948, 961 (9th Cir. 2009) (quoting *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 n.2 (9th Cir. 2001) (brackets added in *West*)). The Court concludes, based on the record presented, that Plaintiffs are adequate class representatives and that Plaintiffs' counsel will vigorously prosecute this action on behalf of the class.

**C.    Rule 23(b)(3) Requirements.**

In order to certify a class under Rule 23(b)(3), Plaintiffs must establish that "common questions . . . 'predominate over any questions affecting only individual members,'" and also must establish that class resolution is "'superior to other available methods for the fair and efficient adjudication of the controversy.'" *Hanlon*, 150 F.3d at 1022 (quoting Fed. R. Civ. P. 23(b)(3)).

**1.    Predominance.**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The focus is "on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

Schneider raises the same points it made with respect to commonality – that there are no uniform, express wage agreements between it and its drivers and that there is wide variety among the drivers' understandings of how they are paid. However, as discussed above, it is undisputed that Schneider unilaterally determines how it pays its drivers. Therefore, the

12

1    drivers' understanding of the terms of their compensation has no impact on what the terms
2    actually are. Moreover it is undisputed that Schneider does not allocate compensation directly
3    for certain activities, but instead, considers them to be covered or included in the compensation
4    for other activities. Whether such a compensation scheme is legal is a question of law which
5    may be determined on a class-wide basis and which predominates over individualized issues.
6    Similarly, Schneider's failure to allocate pay specifically for rest break and meal periods, and
7    whether Schneider's policy regarding the timing and duration of drivers' rest break and meal
8    periods is in compliance with California law are common legal questions which predominate
9    over individualized issues.

10   Common issues also predominate with respect to Plaintiffs' claims for waiting time
11   penalties. It is undisputed that Schneider does not specifically allocate pay for certain activities.
12   If Schneider's compensation scheme violates California law, then Schneider failed to pay its
13   drivers all of their wages timely. Whether Schneider's failure to do so was willful is an single
14   issue which applies equally to all class members.

15   However, with respect to Plaintiffs' claims regarding inaccurate itemized wage
16   statements, the Court finds that individualized issues predominate. To state a claim for
17   violation of California Labor Code § 226, "an employee must suffer injury as a result of a
18   knowing and intentional failure by an employer to comply with the statute." *Price v. Starbucks*
19   *Corp.*, 192 Cal. App. 4th 1136, 1142 (2011). Moreover, the mere failure to include all of the
20   required information is insufficient to state a claim. Instead, an employee must demonstrate
21   that he or she suffered an injury arising from the missing information. *Id*. at 1142-43. Plaintiffs
22   submit the declarations from some drivers stating that they were injured based on Schneider's
23   failure to include all of the miles they actually drove. However, it is undisputed that Schneider
24   does not purport to pay its drivers based on the miles actually driven. Schneider pays its drivers
25   for miles based on calculations by the HCMG. Plaintiff does not submit any evidence to show
26   that the drivers' itemized wage statements did not accurately report the HCMG calculations.
27   Plaintiffs also submit a declaration from Raymond Grewe, who states that the reference to "line
28   haul" on his pay stub did not make sense to him because he is not a line haul driver.

13

1 (Declaration of Raymond Grewe, ¶ 16.) However, this is the only declaration cited to by
2 Plaintiffs which includes this type of injury. Therefore, the Court cannot find that this would be
3 an injury that was suffered by other purported class members. Accordingly, Plaintiffs fail to
4 demonstrate that there were injuries suffered by class members which could or should be
5 adjudicated on a class-wide basis. Accordingly, the Court denies Plaintiffs' motion for class
6 certification with respect to Plaintiffs' claims for inaccurate itemized wage statements.
7 However, with respect to the remainder of their claims, Plaintiffs have met their burden to show
8 that common questions predominate.

   **2.**   **Superiority.**

A plaintiff can satisfy the superiority requirement when he or she can show that "class-wide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). In order to make this determination, the Court should consider the following factors: "the interest of members of the class in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

There is no other pending litigation by or against class members that relates to the issues raised herein. Thus, the first two factors weigh in favor of certification. Furthermore, there is nothing in the record to suggest that concentrating the litigation in this forum would be undesirable or that a class action would be unmanageable. The Court finds that Plaintiffs have met their burden to show that a class action would be a superior method for resolving the litigation.

**CONCLUSION**

For the reasons set forth above, Plaintiffs' motion for class certification is GRANTED IN PART and DENIED IN PART. The Court FURTHER ORDERS that, pursuant to the stipulation regarding Schneider's pending motion for summary judgment, Plaintiffs' opposition

14

to Schneider's motion for summary judgment shall be filed by no later than November 5, 2012, Schneider's reply shall be filed by no later than December 5, 2012, and the hearing on the motion for summary judgment is HEREBY SET for January 11, 2013.

**IT IS SO ORDERED.**

Dated: September 7, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE